UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICHELLE E.,[1] | ) |
|                 *Plaintiff*, | ) |
|                 *v.* | ) No. 2:21-cv-00227-MG-JRS |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) |
|                 *Defendant.* | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

In May 2018, Plaintiff Michelle E. applied for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of August 2, 2017. [Filing No. 18-5 at 2-3.] Her applications were initially denied on August 17, 2018, [Filing No. 18-3 at 2-28], and upon reconsideration on October 29, 2018, [Filing No. 18-3 at 31-57]. Administrative Law Judge Jeanne VanderHeide (the "ALJ") conducted a hearing on September 25, 2019. [Filing No. 18-2 at 44-76.] The ALJ issued a decision on October 22, 2019, concluding that Michelle E. was not entitled to receive benefits. [Filing No. 18-2 at 23-37.] The Appeals Council granted review and issued a decision on March 23, 2021, which adopted the ALJ's findings in large part, with the exception of adopting a more stringent residual functional capacity ("RFC"). [Filing No. 18-2 at 2-8.] On May 26, 2021, Michelle E.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 9.] For the reasons set forth below, the Court **REVERSES** the ALJ's decision denying Michelle E. benefits.

# I.
## STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ (and the Appeals Council) applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide

---

[2] The regulations governing disability determinations for DIB under Title II and SSI under Title XVI are identical in virtually all relevant respects unless otherwise noted. The Court need not include parallel citations unless it notes a distinction between the two sets of regulations.

questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch, 981 F.3d at 601* (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R.

§ 404.1520(a)(4)(iv), (v).  The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner.  See *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Stephens*, 888 F.3d at 327.  When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy.  *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a remand is also appropriate when the decision is not supported by substantial evidence.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'"  *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Michelle E. was 46 years old on August 2, 2017, the date of her alleged onset of disability. [Filing No. 18-3 at 2.]  Michelle E.'s original application alleges that she can no longer work due to fibromyalgia, neuropathy bilateral legs, irritable bowel syndrome ("IBS"), sleep apnea, chronic pain, chronic fatigue, scoliosis, memory loss, and limited mobility.[3] [Filing No. 18-3 at 2-3.]

The ALJ and the Appeals Council followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Michelle E. was not disabled. Specifically, the ALJ and Appeals Council found as follows:

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

- At Step One, Michelle E. engaged in substantial gainful activity[4] after the alleged onset date (from April 2019 through June 2019), however, she did not engage in substantial gainful activity for at least 12 continuous months. [Filing No. 18-2 at 6-7, 28-29.]

- At Step Two, Michelle E. has the following severe impairments: "fibromyalgia, obstructive sleep apnea, degenerative disc disease of the lumbar spine, diabetes, obesity, and neurocognitive disorder." [Filing No. 18-2 at 6-7, 29.]

- At Step Three, Michelle E. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. As to the "paragraph B" criteria the ALJ and the Appeals Council found that Michelle E. had "moderate" limitations in two areas: understanding, remembering or applying information and concentrating, persisting or maintain pace. Further, the ALJ and the Appeals Council found "mild" limitations in the areas of interacting with others and adapting or managing oneself. [Filing No. 18-2 at 6, 30-31.]

- After Step Three but before Step Four, the Appeals Council determined that Michelle E. had the RFC to perform sedentary work (with certain additional restrictions) as defined in 20 CFR 404.1567(a) and 404.967(a) rather than light work as the ALJ found in her written decision. Notably, the ALJ posed a hypothetical for *sedentary* work to the vocational expert ("VE") during the hearing, rather than light work. [Filing No. 18-2 at 71.] Thus, the RFC adopted by the Appeals Council was as follows: "sedentary work … except the claimant must be allowed to sit or stand alternatively, not sitting or standing greater than 20 minutes at a time, at a bench or stool at the workstation. The claimant can never climb ladders, ropes, or scaffolds, and can only occasionally climb ramps or stairs. She is also limited to occasional balancing, stooping, kneeling, crouching, and crawling. She must avoid all exposure to unprotected heights. The claimant's work is limited to simple, routine tasks. She must be employed in a low stress job, defined as having only occasional decision making required and only occasional changes in the work setting. The claimant must work where there is no fastpaced production work." [Filing No. 18-2 at 7.]

- At Step Four, relying on the testimony of the VE and considering Michelle E.'s RFC, the ALJ and Appeals Council determined that Michelle E. is unable to perform any of her past relevant work as a certified nurse assistant, corrections officer, or teacher assistant. [Filing No. 18-2 at 7; Filing No. 18-2 at 36.]

- At Step Five, relying on the VE's testimony and considering Michelle E's age, education, work experience, and RFC, the ALJ and Appeals Council determined there are jobs existing in significant numbers in the national economy that she could perform,

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

such as a bench assembler, circuit board inspector, and surveillance monitor. [Filing No. 18-2 at 7; Filing No. 18-2 at 36.]

## III.
### DISCUSSION

Michelle E. argues[5] that the ALJ and Appeals Council erred in the following ways: (1) the ALJ (and Appeals Council by adoption) did not provide a sufficient explanation for rejecting portions of the state agency consultants' opinions; and (2) the mental RFC did not include all limitations in the record, in particular checkbox limitations addressing CPP and social interactions.

### A. The Opinion of the State Agency Consultants

The state agency consultants, Dr. J. Gange, PhD and Dr. Kari Kennedy, PsyD, opined that Michelle E. was "moderately" limited in the paragraph B areas of CPP and interacting with others. [Filing No. 18-3 at 37.] As for CPP, in the so-called checkbox ratings section, the consultants opined that Michelle E. was moderately limited in two areas: (1) her "ability to carry out detailed instructions," and (2) her "ability to maintain attention and concentration for extended periods." [Filing No. 18-3 at 41.] As for interacting with others, in the checkbox ratings section, the consultants opined that Michelle E. was moderately limited in only one area: her "ability to accept instructions and respond appropriately to criticism from supervisors." [Filing No. 18-3 at 42.] Continuing to the narrative portion of the opinion, the consultants opined that Michelle E. "retains the ability to complete simple, unskilled tasks within physical parameters in settings that minimize prolonged social interactions." [Filing No. 18-3 at 42.]

---

[5] Michelle E.'s brief is poorly organized, and the Court found it difficult to discern specific assignments of error. Counsel shall take care in the future to ensure that issues being raised for the Court's review are clearly articulated.

The ALJ found the consultants' opinion about Michelle E.'s CPP limitations persuasive but the opinion addressing limitations in interacting with others not persuasive. [Filing No. 18-2 at 35.] The ALJ included the following rationale to support this conclusion:

> [Dr.] Kennedy's opinion of the claimant's capacity for simple tasks is consistent with [Dr.] Zera's findings and opinions, and with Dr. Rusk's observations. [Dr.] Kennedy's opinion of the claimant's ability to interact with others is not consistent with [Dr.] Zera's observations of normal speech and behavior, or with treating sources who described the claimant as cooperative.

[Filing No. 18-2 at 35.]

In her brief, Michelle E. argues that the ALJ's analysis of the consultants' opinion is inadequate. [Filing No. 24 at 12.] She says that notations in medical notes that a patient is "cooperative" during a medical examination "does not logically equate to an ability to respond appropriately to a supervisor's criticisms or instructions she might not comprehend." [Filing No. 24 at 12.] She also says that there is plenty of record evidence to support the consultants' opinion that she has difficulty interacting with others, citing documentation that she demonstrated a sad and tearful affect and her performance on the WAIS-IV test. [Filing No. 24 at 13.] Finally, even though Dr. Kennedy adopted the opinion of Dr. Gange verbatim on reconsideration, Michelle E. also faults the ALJ's analysis for not specifically mentioning Dr. Gange's name in the decision. [Filing No. 24 at 13.]

The Commissioner responds that the ALJ sufficiently considered the consultants' opinion under 20 C.F.R. § 404.1520c, and in particular, the supportability and consistency of the opinion. [Filing No. 27 at 10.] The Commissioner argues that Michelle E. is arguing for "a level of articulation not required of the ALJ" under 20 C.F.R. § 404.1520c. [Filing No. 24 at 12.] The Commissioner says that by comparing the consultants' opinion to that offered by Dr. Zera, the ALJ sufficiently discussed the consistency of the consultants' opinion. [Filing No. 14 at 27.]

In reply, Michelle E. says the Commissioner never addressed her argument that the ALJ overlooked Dr. Gange's opinion. [Filing No. 31 at 1-2.]

As a preliminary matter, the Court rejects Michelle E.'s argument that the ALJ erred by not specifically referencing Dr. Gange by name. Often in social security appeals, the reviewing consultant on reconsideration adopts in whole the findings of the initial consultant. That is what occurred here. Dr. Kennedy's opinion effectively is Dr. Gange's opinion and by reviewing Dr. Kennedy's opinion, the ALJ's review necessarily included Dr. Gange's opinion. *See, e.g.*, *Satterthwaite v. Kijakazi*, 2022 WL 468946, at *10 (W.D.N.C. Feb. 15, 2022) ("Even though the ALJ did not mention Dr. Crump by name, the ALJ was aware of her opinion by reviewing the opinion of Dr. Barham."). Setting aside that preliminary issue, the Court now turns to whether the ALJ's discussion of the consultants' opinion satisfied the articulation requirements in the SSA regulations.

Because Michelle E. filed for benefits after March 27, 2017, 20 C.F.R. § 404.1520c provides the framework for the ALJ's evaluation of medical source opinions. Under this framework, ALJs will evaluate all medical source opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c). The opinion of a claimant's treating physician no longer receives controlling weight. 20 C.F.R. § 404.1520c(a). "Instead, the most important factors are a medical opinion's supportability and consistency with the evidence in the record." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022) (internal quotation marks omitted). These are the factors that the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b).

For a medical opinion to be supportable, it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, for an opinion to be consistent, it must be, reductively, consistent with the record. 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Here, in finding the consultants' social limitation unpersuasive, the ALJ merely stated that "[Dr.] Kennedy's opinion of the claimant's ability to interact with others is not consistent with [Dr.] Zera's observations of normal speech and behavior, or with treating sources who described the claimant as cooperative." [Filing No. 18-2 at 35.] The Commissioner says this statement speaks to the "consistency" factor, but the ALJ did not explain how Michelle E.'s cooperativeness at a consultative medical exam translates to her ability to appropriately interact with others in the workplace. *See, e.g.*, *Willie B. v. Kijakazi*, 2022 WL 1773737, at *4 (N.D. Ill. June 1, 2020). Furthermore, the ALJ did not discuss the supportability of the consultants' opinion that Michelle E. was socially limited. The ALJ does not mention objective evidence either supporting or undermining the consultants' opinion, including the consultants' reference to Michelle E.'s report that she gets agitated quickly and stays to herself, [Filing No. 18-3 at 37]. *See, e.g.*, *Stevens v. Kijakazi*, 2022 WL 1000598, at *7 (E.D. Wis. Apr. 4, 2022) ("The failure to address the supportability of a prior administrative medical finding constitutes legal error.") While an ALJ

9

need not address every piece of evidence when evaluating the supportability and consistency, the oversimplified and conclusory statement provided here prevents the Court from being able to conduct a meaningful review. Because the ALJ did not adequately consider the supportability and consistency of the state agency consultants' opinion, the Court will remand this case for further consideration.

### B.  Additional Issues

The Court need not resolve other issues raised by Michelle E. regarding the RFC adopted by the ALJ because the issues discussed above are dispositive.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying Michelle E. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above.  Final judgment will issue by separate entry.

Date: 9/27/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record**